1  Christopher M. Burke (214799)
cburke@scott-scott.com
2  Hal D. Cunningham (243048)
hcunningham@scott-scott.com
3  SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
4  4771 Cromwell Avenue
Los Angeles, CA 90027
5  Telephone: 213-985-1274
Facsimile: 213-985-1278
6
7  *Counsel for Plaintiffs*
8
9  [Additional Counsel on Signature Page.]

10  **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
11

12  PHILIP KIRSOPP, WILLIAM KRATZ,
WILLIAM NEFF, and JAMES R.
13  KRAPF, Individually and on Behalf of
All Others Similarly Situated,
14
15                              Plaintiffs,
16      vs.
17  YAMAHA MOTOR CO., LTD. and
18  YAMAHA MOTOR CORPORATION,
U.S.A.,
19
20                              Defendants.
21
22
23
24
25
26
27
28

No.

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

**JURISDICTION AND VENUE**

1.     Pursuant to Local Rule 8-1, this Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. §1332, as amended in February 2005 by the Class Action Fairness Act. Subject matter jurisdiction is proper because:  (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) Plaintiffs and a substantial number of the members of the Class are citizens of states different from that of Defendants.   Personal jurisdiction is proper as Defendants have purposefully availed themselves of the privilege of conducting business activities within this District.   Defendant Yamaha Motor Corporation, U.S.A. ("YMUSA") has its principal place of business in this District, and Defendants regularly conduct business in this District.   Thus, under 28 U.S.C. §1391, Defendants are deemed to reside in this District.   As such, venue is proper in this judicial district.

**NATURE OF THE ACTION**

2.     Plaintiffs Philip Kirsopp, William Kratz, William Neff, and James R. Krapf ("Plaintiffs") allege the following based upon personal knowledge as to themselves and their own acts and upon information and belief and the investigation by Plaintiffs' counsel, which included, among other things, a review of public documents and announcements made by Yamaha Motor Co., Ltd. ("YMC") and YMUSA (collectively, "Defendants" or "Yamaha") as to all other matters.  Plaintiffs believe that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

3.     This action seeks to remedy the unfair, deceptive, and/or unlawful business practices of Defendants with respect to an inherent design and/or manufacturing defect in Defendants' Yamaha four stroke outboard motors –

1

specifically, first-generation (2000 to 2004 model years) four stroke F-Series outboards (the "Four Stroke Outboards").

4.   As described below, an inherent design and/or manufacturing defect in Defendants' Four Stroke Outboards allowed the almost immediate onset of corrosion to internal component parts, which gradually worsened.  The corrosion forced owners such as Plaintiffs to obtain significant repair or replacement of the corroded parts typically after 500 to 700 hours of use, even if the Four Stroke Outboards were properly serviced and maintained.  As a result, the Four Stroke Outboards are unfit for their intended use and purpose.

5.   Due to the concealed nature of the corroded component parts, Plaintiffs and other similarly situated owners could not have seen or performed a visual inspection that would have revealed the defect prior to the advancement of the corrosion to the stage where the Four Stroke Outboards' performance was compromised. This inherent and hidden defect posed a significant safety risk to Plaintiffs and other Class members.

6.   Based on inherent defects in the design and/or manufacture of the Four Stroke Outboards, Defendants knew or should have known that Plaintiffs and the Classes would be forced to replace the internal parts damaged by corrosion and thereby incur not just the cost of the replacement parts but also significant labor costs as well.

7.   Defendants concealed these facts from Plaintiffs and other Class members.  Further, Defendants failed to warn consumers, such as Plaintiffs and other Class members, of the potential danger and safety risk of a sudden and catastrophic engine failure caused by the onset of corrosion in the Four Stroke Outboards.

CLASS ACTION COMPLAINT

8.     Defendants' failure to disclose this defect, which they knew or should have known about, constitutes both an actionable misrepresentation and an unfair, unlawful, fraudulent, and/or deceptive business practice.

9.     Plaintiffs and other Class members were misled into purchasing outboard motors of a quality and value different than they were promised.

10.    To date, Defendants and their agents have been unable or unwilling to fully repair and/or offer replacement parts or replacement of the defective Four Stroke Outboards.

11.    As a result of Defendants' practices, Plaintiffs and the other Class members have suffered injury-in-fact.

12.    Plaintiffs therefore bring this action on behalf of themselves and the proposed Classes of similarly situated purchasers of Defendants' Four Stroke Outboards described herein.

## PARTIES

13.    Plaintiff Philip Kirsopp ("Kirsopp") is a citizen of Connecticut and an individual consumer.  Plaintiff Kirsopp purchased one of Defendants' Four Stroke Outboards in Massachusetts in 2008, specifically a 2002 Yamaha F225.   After approximately 500 hours of use on the motor, Mr. Kirsopp discovered the corrosion defect.  Mr. Kirsopp was thereby damaged by Defendants' practices.

14.    Plaintiff William Kratz ("Kratz") is a citizen of Maryland and an individual consumer.  Plaintiff Kratz purchased one of Defendants' Four Stroke Outboards in Maryland in 2005, specifically a 2003 Yamaha F225.  The remaining factory warranty was transferred to Mr. Kratz upon purchase.  After approximately 960 hours of use on the motor, Mr. Kratz discovered the corrosion defect. Mr. Kratz was thereby damaged by Defendants' practices.

15.    Plaintiff William Neff ("Neff") is a citizen of Connecticut and an individual consumer.   Plaintiff Neff purchased one of Defendants' Four Stroke

CLASS ACTION COMPLAINT

Outboards in Rhode Island in 2008, specifically a 2002 Yamaha F225. After approximately 475 hours of use on the motor, Mr. Neff discovered the corrosion defect. Mr. Neff was thereby damaged by Defendants' practices.

16.   Plaintiff James R. Krapf ("Krapf") is a citizen of Maryland and an individual consumer. Plaintiff Krapf purchased two of Defendants' Four Stroke Outboards in Maryland in 2010, specifically, 2002 Yamaha F225s. After approximately 700 hours of cumulative use on each motor, Mr. Krapf discovered the corrosion defect. Mr. Krapf was thereby damaged by Defendants' practices.

17.   Defendant YMC is a Japanese corporation whose principal place of business is in Shizuoka, Japan, which has at all times material hereto transacted substantial business within the United States and within the State of California.

18.   Defendant YMUSA operates as a wholly-owned subsidiary of Defendant YMC for the importing and marketing of Yamaha products. YMUSA is a corporation organized and existing under the laws of the State of California and has its principal place of business at 6555 Katella Avenue, Cypress, California 90630.

19.   Defendants, and each of them, were the agents or employees of each other and were acting at all times within the course and scope of such agency and employment and contributed to and caused the breaches and other liabilities as alleged herein and are legally responsible because of their relationship with their co-Defendants for the relief and recovery sought by Plaintiffs and the members of the Class.

20.   Defendants, and each of them, were the manufacturers, designers, developers, processors, producers, assemblers, builders, testers, inspectors, wholesalers, retailers, sellers and distributors of the Four Stroke Outboards.

## **ALLEGATIONS OF FACT**

21.    At all relevant times herein, Defendants developed, manufactured, marketed, sold, and distributed outboard motors under the Yamaha brand name throughout the United States through YMUSA's central offices in Cypress, California.

22.    On information and belief, Defendants phased out the Four Stroke Outboards with the introduction of next generation models on or around 2005.

23.    The Four Stroke Outboards has a latent defect that is inherent within the motors themselves and/or are the result of design or manufacturing flaws. The defect results in an almost immediate onset of corrosion to internal dry exhaust component parts.

24.    The component parts affected by the defect are found on the "dry" side of the exhaust cavities of the Four Stroke Outboards, which is not exposed directly to water.  The dry side is separated from designed water passages that allow water to pass through in order to cool the engine. Thus, absent the defect, there should have been no corrosion on the dry side of the Four Stroke Outboard.

25.    An external examination cannot detect the internal corrosion. Disassembly of the engine and removal of the power heads is required to observe the hidden and unexpected corrosion to the exhaust components. Thus, Plaintiffs and other Class members could not have discovered the latent defect without actually taking apart their Four Stroke Outboard.

26.    Indeed, authorized Yamaha dealers and/or repair technicians servicing Four Stroke Outboards in accordance with Yamaha service manual guidelines were not told to inspect for corrosion in internal dry exhaust components during annual maintenance checks, which would have allowed corrosion problems to be discovered while the Four Stroke Outboards were still covered under the stated terms of the written warranty.

CLASS ACTION COMPLAINT

27.    Thus, the onset of corrosion would not – and could not – be discovered, even by trained service technicians performing annual service checks, until the Four Stroke Outboards' corrosion began to manifest in related engine damage, such as oil leaks, which gave technicians reason to open the engine and discover the corrosion.

28.    It was not until after approximately 500 to 700 hours of use that corrosion of the hidden internal parts could be discovered when repairs and/or replacement of component parts became necessary.  This was typically beyond the durational limitation of the three-year written warranty.

29.    By marketing, selling, and distributing Four Stroke Outboards to purchasers in the United States, Defendants made actionable statements that their consumer products were free of defects in their design and/or manufacture, and that they were safe and fit for their ordinary intended use and purpose.

30.    By marketing, selling, and distributing the Four Stroke Outboards to purchasers in the United States, Defendants made actionable statements that the ordinary use of these outboards would not involve undisclosed safety risks. Further, Defendants concealed what they knew or should have known about the safety risks resulting from the material defects in design and/or manufacture.

31.    Additionally, in marketing, selling, and distributing Four Stroke Outboards to purchasers in the United States, Defendants concealed or failed to disclose to these purchasers, including Plaintiffs and the Class members, that in order to keep the Four Stroke Outboards operational beyond the warranty period, significant repair or replacement costs would be incurred.

32.    Defendants made the above-described actionable statements, omissions, and concealments with knowledge that the representations were false and misleading and with the intent that consumers would rely upon such concealment, suppression, and omissions.  Alternatively, Defendants were reckless

6

1  in not knowing that these representations were false and misleading at the time

2  they were made.

3        33.    Defendants had exclusive access to data and research conducted prior

4  to and during the design and manufacture of the Four Stroke Outboards.

5        34.    Repair or replacement of corroded parts in Four Stroke Outboards

6  involves significant cost and expense to consumers such as Plaintiffs and the other

7  Class members.  Alternatively, once the corrosion problems are detected,

8  consumers are forced to incur the expense of purchasing a new outboard motor

9  rather than paying the prohibitive cost of repairs.

10        35.    Plaintiff Kirsopp purchased a pre-owned boat equipped with one of

11  Defendants' Four Stroke Outboards (specifically, model number F225) in 2008.

12  After the motor had accumulated approximately 500 hours of use, Mr. Kirsopp

13  discovered internal corrosion of exhaust components. Mr. Kirsopp has received an

14  estimate of $3,700 for parts and labor to repair corrosion-based issues.

15        36.    Plaintiff Kratz purchased a pre-owned boat equipped with one of

16  Defendants' Four Stroke Outboards (specifically, model number F225) in 2005.

17  After the motor had accumulated approximately 970 hours of use, Plaintiff Kratz

18  discovered internal corrosion of exhaust components while inspecting the motor

19  with the lower unit removed using a bore scope.  Plaintiff Kratz spent

20  approximately $673 on replacement parts to repair his corrosion-based issues.

21        37.    Plaintiff Neff purchased a pre-owned boat equipped with one of

22  Defendants' Four Stroke Outboards (specifically, model number F225) in 2008.

23  After the motor had accumulated approximately 475 hours of use, during an oil

24  pump service, Plaintiff Neff discovered internal corrosion of exhaust components.

25  Ultimately, Plaintiff Neff paid a repair invoice of $3,201.26, which included an

26  approximately $1,800 charge for parts and labor to replace the corroded engine oil

27  pan, exhaust manifold, and other component parts.

28

CLASS ACTION COMPLAINT

38.     Plaintiff Krapf purchased a pre-owned boat equipped with two of Defendants' Four Stroke Outboards (specifically, model number F225) in 2010. After the motors had accumulated approximately 700 hours of cumulative use, Plaintiff Krapf discovered internal corrosion of exhaust components while inspecting the motors with a bore scope.  Plaintiff Krapf spent approximately $6,000 on replacement parts and labor to replace the corroded engine parts in both motors.

39.     Other consumers have had similar experiences to Plaintiffs.  As reported in a story published in the October/November 2012 edition of BoatUS Magazine (the "BoatUS Magazine article"), the corrosion problems with Defendants' Four Stroke Outboards led to a series of complaints with BoatUS's Consumer Protection Bureau.

40.     As the BoatUS Magazine article reports, the Four Stroke Outboards repeatedly manifested specific corrosion problems after 500 to 700 hours of use. The Four Stroke Outboards' exhaust gases corrode the engines' exhaust tubes and sometimes the engines' oil pans, which are in the same area.  The BoatUS Magazine article quotes an interview with a marine surveyor: "I've seen the damage to six engines myself, and know at least a dozen others in the New Jersey area."     *See*     http://www.boatus.com/magazine/2012/october/Yamaha-F225-Corrosion-Complaints.asp (last accessed on March 31, 2014).

41.     The same surveyor told BoatUS Magazine that the corrosion issue was not outwardly visible.  According to the surveyor, the engine may lose power and begin to smoke and, in some cases, the oil dipstick can be blown out of the engine from the exhaust gas pressure.  This type of failure presents a significant undisclosed safety concern for Four Stroke Outboard owners such as Plaintiffs and other Class members.

CLASS ACTION COMPLAINT

42.    BoatUS Magazine reported that a marine surveyor in Massachusetts inspected three failed Four Stroke Outboards and determined that the corrosion happened internally and to the dry side of the exhaust.  The surveyor determined, "Flushing would have no effect . . .  there's nothing an owner could've done to prevent serious corrosion from eventually eating through the exhaust system." *Id*.

43.    The undisclosed defects are material because neither Plaintiffs nor the other Class members would have purchased the Four Stroke Outboards if they had known of the defect.

44.    An expensive new outboard motor is not meant to be disposable at the conclusion of the manufacturer warranty.  Therefore, the presence of a defect, which would necessitate a major overhaul or expensive replacement of internal component parts within 500 to 700 hours of use, is material information to consumers, such as Plaintiffs and other Class members.

45.    A reasonable consumer would not expect the onset of serious corrosion relatively early in the useful life of the Four Stroke Outboards.  This is true regardless of the durational period of any written warranty.  To enjoy the outboard engine for its intended use, a consumer would not expect to have to incur very expensive repair and replacement costs in order to be able to use  their his or her engine beyond the durational period of the written warranty and after as few as 500 hours of use.

46.    The internal component parts reported to have suffered widespread problems with corrosion, including the engine oil pan and exhaust tubes, are integral to the operation of the Four Stroke Outboards.  The severe corrosion of internal parts and components such as the engine oil pan and the exhaust tubes leads to increased risk of total engine failure while on the water or at sea. Indeed, without correction, the damage to internal parts caused by the corrosion would ultimately lead to inevitable engine failure. This presents a significant safety issue.

9

47.     The widely reported problems with severe corrosion to internal dry exhaust components in the Four Stroke Outboards are not believed to be salt-water related.   On information and belief, the severe corrosion was experienced by owners who used their boats on fresh water as well as those who used their boats in saltwater or brackish environments.

48.     Based on the increased risk of engine failure alone, the Four Stroke Outboards purchased by Plaintiffs and other Class members were worth less than the purchase price that was paid.

49.     The possibility of a complete engine failure while at sea is a serious known safety risk for boat operators.   Because of the latent undisclosed defects, Plaintiffs and the other Class members unknowingly put themselves at risk merely by using the Four Stroke Outboards as they were intended to be used.

50.     Plaintiffs and the Classes expressly disclaim any recovery for physical injury flowing from accidents caused by corrosion to the Yamaha outboard motors at issue.   Nevertheless, the increased safety risk they took is an obvious consequence of Defendants' defective design and serves as an independent justification for the relief sought by Plaintiffs and the Classes.

51.     On information and belief, second generation or next-generation high powered Four Stroke Outboards manufactured, marketed, and sold by Defendants from 2005 onward contained a design and/or manufacturing change that corrected the defect and, as a result, the problems with massive corrosion to internal components with four stroke motors ceased to exist and were no longer an issue for Defendants or for their customers.

52.     On information and belief, the design change introduced in 2005 addressed issues with the materials used in paint coating and/or the methods by which Defendants apply the paint coating to the internal cooling passages of the Four Stroke Outboards.

10

CLASS ACTION COMPLAINT

53.    The development and implementation of the design change to the second or next generation Defendants' Four Stroke Outboards (and the replacement parts provided for damaged Four Stroke Outboards) is demonstrative of Defendants' knowledge or recklessness with regard to the extensive corrosion problem experienced by purchasers of Four Stroke Outboards, such as Plaintiffs and the other Class members.

54.    By coating the internal components of the next generation four stroke motors differently, Defendants have acknowledged that there is a defect with the Four Stroke Outboards purchased by Plaintiffs and other members of the Class.

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND CONTINUING VIOLATIONS

55.    Plaintiffs did not discover — and could not have discovered through the exercise of reasonable diligence — the existence of the claims sued upon herein until immediately prior to commencing this civil action.

56.    Any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal, as well as the self-concealing nature of the defect.

57.    Because of the self-concealing nature of Defendants' actions and affirmative acts of concealment, Plaintiffs and other Class members assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

58.    Plaintiffs and other Class members could not have discovered through the exercise of reasonable diligence that Defendants' Four Stroke Outboards were defective within the time period of any applicable statute of limitations.  Among other things, due to the concealed placement of the internal parts experiencing corrosion, Plaintiffs and other Class members did not and could not have, through reasonable visual inspection, discovered the defect.

11

59.     Any applicable statute of limitations that might otherwise apply to bar any of Plaintiffs' claims or the claims of the other Class members is tolled by Defendants' concealment of their defective design and/or manufacture of the Four Stroke Outboards.  As a result of Defendants' concealment, neither Plaintiffs nor the other Class members could have discovered the defects, even upon exercise of reasonable diligence, until such time as the repair and/or replacement of components was necessary or until such time as the motor failed due to the corrosion of internal components.

60.     By reason of the foregoing, the claims of Plaintiffs and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## **CLASS ACTION ALLEGATIONS**

61.     Plaintiffs bring this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the Class and Connecticut and Maryland Sub-Classes defined as follows:

The Nationwide Class
All persons located in the United States, or in such states as the Court determines to be appropriate, who purchased one or more Yamaha 2000 to 2004 model year Four Stroke Outboards.

The Connecticut Sub-Class
All persons located in the state of Connecticut who purchased one or more Yamaha 2000 to 2004 model year Four Stroke Outboards.

The Maryland Sub-Class
All persons located in the state of Maryland who purchased one or more Yamaha 2000 to 2004 model year Four Stroke Outboards.

62.     Excluded from the Class are individuals who have claims for personal injury resulting from failure of Yamaha outboard motors.  Also excluded from the Class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director, or employee

12

of Defendants; any successor or assign of Defendants; any Judge to whom this case is assigned as well as his or her immediate family and staff; and anyone who purchased Four Stroke Outboards for resale.

63.    The Class is sufficiently numerous, as it includes thousands of persons who have purchased Four Stroke Outboards.  Thus, joinder of such persons in a single action or bringing all members of the Class before the Court is impracticable for purposes of Rule 23(a)(1).  The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court.  The disposition of the claims of the members of the Classes in this class action will substantially benefit both the parties and the Court.

64.    There are questions of law and fact common to the Class for purposes of Rule 23(a)(2), including, but not limited to, the following:

a.    whether Defendants provided Plaintiffs and the other Class members with an outboard motor with design and/or manufacturing defects which led to premature onset of corrosion;

b.    whether Defendants knew or should have known of the design and/or manufacturing defects;

c.    whether the defective design and/or manufacture constitute material facts to purchasers of the Four Stroke Outboards;

d.    whether Defendants have a duty to disclose the defective nature of the outboard motors;

e.    whether the defective design and/or manufacture leads to premature onset of corrosion in the Four Stroke Outboards;

f.    whether the defective design and/or manufacture leads to increased damage to other component parts, engine failure, and associated safety risks;

13

CLASS ACTION COMPLAINT

g.      whether Defendants have engaged in unlawful, unfair or fraudulent business practices; and

h.      whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to, restitution or injunctive relief.

65.    Plaintiffs' claims are typical of the claims of the Classes and do not conflict with the interests of any other members of the Classes in that both the Plaintiffs and the other Class members purchased Four Stroke Outboards with the same defective design and/or manufacture as found in other outboard motors.

66.    Plaintiffs will fairly and adequately represent the interests of the Classes.  They are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation and have experience in class action litigation.

67.    A class action is superior to other methods for the fast and efficient adjudication of this controversy.  While substantial, the injuries suffered by each individual Class member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  Further, it would be virtually impossible for the Class members to individually and effectively redress the wrongs done to them.  A class action regarding the issues in this case does not create any problems of manageability. The class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

68.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the members of the Classes.  Similar or identical statutory and common law violations and deceptive business practices are involved.   Individual questions, if any, pale by comparison to the numerous common questions that predominate.

14

CLASS ACTION COMPLAINT

69.    The injuries sustained by Plaintiffs and the other Class members flow, in each instance, from a common nucleus of operative facts: Defendants' misconduct.

70.    Plaintiffs and the other Class members have been damaged by Defendants' misconduct.  The members of the Classes have paid for a product that they would not have purchased in the absence of Defendants' deceptive scheme, or, alternatively, would have purchased at a lesser price.

71.    Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Class members have suffered, and will continue to suffer, irreparable harm and damages as a result of Defendants' wrongful conduct.  Because of the nature of the individual claims of the members of the Classes, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein, and a representative class action is therefore the appropriate, superior method of proceeding and essential to the interests of justice insofar as the resolution of claims of the Class members is concerned.  Absent a representative class action, Class members would continue to suffer losses for which they would have no remedy, and Defendants would unjustly retain the proceeds of their ill-gotten gains.

72.    Even if separate actions could be brought by individual members of the Classes, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings, which might be dispositive of the interests of the other Class members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

CLASS ACTION COMPLAINT

# CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### Violations of the Magnuson-Moss Warranty Act
### 15 U.S.C. §§2301, *et seq*.
### (Brought on Behalf of the Nationwide Class)

73.    Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

74.    Defendants' Four Stroke Outboards constitute "consumer products" as defined in 15 U.S.C. §2301.

75.    Plaintiffs and the other Nationwide Class members are "consumers" as defined in 15 U.S.C. §2301.

76.    Defendants are "suppliers" of the Four Stroke Outboards as defined in 15 U.S.C. §2301.

77.    Defendant YMUSA is a "warrantor" as defined in 15 U.S.C. §2301.

78.    Defendant YMUSA supplied a "written warranty" regarding its Four Stroke Outboards, as defined in 15 U.S.C. §2301(6).

79.    As suppliers and in connection with the sale of Four Stroke Outboards, Defendants made "implied warranties" arising under state law regarding their Four Stroke Outboards as defined in 15 U.S.C. §2301(7).

80.    The warranties made by Defendants pertained to consumer products costing the consumer more than five dollars. *See* 15 U.S.C. §2302(e).

81.    Plaintiffs invoke federal jurisdiction for their claims stated under this Count pursuant to the Class Action Fairness Act.

82.    Defendants violated the Magnuson-Moss Warranty Act by their failure to comply with the implied warranties that they made to Plaintiffs and other Nationwide Class members.  *See* 15 U.S.C. §§2301, *et seq*.

83.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the Magnuson-Moss Warranty Act claims of Plaintiffs and the Nationwide Class members, are procedurally and substantively unconscionable under federal law and the applicable state common law.

84.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims of Plaintiffs and the Nationwide Class members in this count is tolled under equitable doctrines.

85.     Plaintiffs and the other Nationwide Class members sustained injuries as a proximate result of Defendants' violation of their written and/or implied warranties.  Plaintiffs and the members of the Nationwide Class are entitled to injunctive relief, including recall and replacement, restitution, rescission or other relief as appropriate.

## SECOND CLAIM FOR RELIEF
### Violations of California Business & Professions Code §§17200, *et seq*. based on Fraudulent Acts and Practices
### (Brought on Behalf of the Nationwide Class)

86.     Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

87.     Plaintiffs bring this claim individually and on behalf of members of the Nationwide Class under California law.

88.     Under Business & Professions Code §§7200, *et seq.* (the "UCL"), any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

89.     Defendants have engaged, and continue to engage, in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, Defendants' failure to disclose and/or conceal material facts from Plaintiffs and

CLASS ACTION COMPLAINT

1  the other members of the Nationwide Class, namely, the defective design and/or

2  manufacture of the Four Stroke Outboards, and that said outboard motors were

3  likely to prematurely experience serious corrosion with attendant risk of engine

4  failure and corresponding safety risks.

5       90.    Plaintiffs and the other Nationwide Class members would not have

6  purchased the Four Stroke Outboards or would not have paid such a high price but-

7  for Defendants' false promotion.  Plaintiffs and the Nationwide Class members did

8  not obtain the full value of the Four Stroke Outboards due to Defendants'

9  misrepresentations.   Accordingly, Plaintiffs and the Nationwide Class members

10  have suffered injury in fact and lost money or property as a direct and proximate

11  result of Defendants' misrepresentations and material omissions.

12       91.    By committing the acts alleged above, Defendants have engaged in

13  fraudulent business acts and practices, which constitute unfair competition within

14  the meaning of the UCL.

15       92.    Under the direction and control of YMC, Defendants' complained of

16  business acts and practices were centered at and carried out by YMUSA, a

17  California corporation and a wholly-owned subsidiary of YMC, located at 6555

18  Katella Ave, Cypress, California 90630. The complained of business acts and

19  practices emanated from YMUSA throughout the United States, injuring all

20  Nationwide Class members.

21       93.    In accordance with California Business & Professions Code §17203,

22  Plaintiffs and the Nationwide Class members are entitled to equitable relief

23  including restitution and/or disgorgement of all revenues and profits that may have

24  been obtained by Defendants as a result of such business acts and practices.

25

26

27

28

**THIRD CLAIM FOR RELIEF**
**Violations of California's UCL based on Commission of Unlawful Acts**
**(Brought on Behalf of the Nationwide Class)**

94.    Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

95.    Plaintiffs bring this claim individually and on behalf of members of the Nationwide Class under California law.

96.    The violation of any law constitutes an unlawful business practice under the UCL.

97.    Defendants have violated the UCL's prohibition against engaging in unlawful acts and practices by, *inter alia*, violating the Magnuson-Moss Warranty Act, 15 U.S.C. §§2301, *et seq.*

98.    Plaintiffs and the Nationwide Class members would not have purchased the Four Stroke Outboards, or would not have paid such a high price, but for Defendants' false promotion.  Plaintiffs and the Nationwide Class members did not obtain the full value of the Four Stroke Outboards due to Defendants' misrepresentations.   Accordingly, Plaintiffs and the Nationwide Class members have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

99.    By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of the UCL.

100.   Under the direction and control of YMC, Defendants' complained of acts and practices were centered at and carried out by YMUSA, a California corporation and a wholly-owned subsidiary of YMC, located at 6555 Katella Ave, Cypress, California 90630.  The complained of business acts and practices

19

emanated from YMUSA throughout the United States, injuring all Nationwide Class members.

101.   In accordance with California Business & Professions Code §17203, Plaintiffs and the Nationwide Class members are entitled to equitable relief, including restitution and/or disgorgement of all revenues and profits that may have been obtained by Defendants as a result of such business acts and practices.

**FOURTH CLAIM FOR RELIEF**
**Violations of California's UCL Based on Unfair Acts and Practices**
**(Brought on Behalf of the Nationwide Class)**

102.   Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

103.   Under the UCL, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

104.   Defendants have engaged, and continue to engage, in conduct which is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.

105.   Defendants have engaged, and continue to engage, in conduct that violates the legislatively declared policies of, *inter alia*: (1) California Civil Code §§1572, 1573, 1709, 1710, and 1711 against committing fraud and deceit, and (2) California Civil Code §1770 against committing acts and practices intended to deceive consumers regarding the representation of goods in certain particulars. Defendants gain an unfair advantage over their competitors, whose advertising and marketing for other similar products must comply with these laws.

20

CLASS ACTION COMPLAINT

106.  Plaintiffs and the Nationwide Class members would not have purchased the Four Stroke Outboards, or would not have paid such a high price, but for Defendants' false promotion.  Plaintiffs and the Class members did not obtain the full value of the Four Stroke Outboards due to Defendants' misrepresentations.  Accordingly, Plaintiffs and the Nationwide Class members have suffered injury in fact and lost money or property as a direct and proximate result of Defendants' misrepresentations and material omissions.

107.  By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of the UCL.

108.  Under the direction and control of YMC, Defendants' complained of acts and practices were centered at and carried out by YMUSA, a California corporation and a wholly-owned subsidiary of YMC, located at 6555 Katella Ave, Cypress, California 90630. The complained of business acts and practices emanated from YMUSA throughout the United States, injuring all Nationwide Class members.

109.  In accordance with California Business & Professions Code §17203, Plaintiffs and the Nationwide Class members are entitled to equitable relief including restitution and/or disgorgement of all revenues and profits that may have been obtained by Defendants as a result of such business acts and practices.

**FIFTH CLAIM FOR RELIEF**
**Violations of Connecticut Unfair Trade Practices Act**
**(Brought on Behalf of the Connecticut Sub-Class)**

110.  Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

21

111.   Plaintiffs Kirsopp and Neff and members of the Connecticut Sub-Class are "persons" as set forth in Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§42-110a, *et seq*. ("CUTPA").

112.   CUTPA §42-110b states: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

113.   Defendants' marketing and sale of the Four Stroke Outboards constitutes violations of CUTPA §42-110b with respect to Plaintiffs and the Connecticut Sub-Class.  Specifically, §42-110g(a) states: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by §42-110b, may bring an action . . . to recover actual damages."

114.   Plaintiffs Kirsopp and Neff and the Connecticut Sub-Class members have suffered an ascertainable loss because they did not obtain the full value of the Four Stroke Outboards due to Defendants' misrepresentations.   Accordingly, Plaintiffs and the Connecticut Sub-Class have suffered injury in fact and lost money or property as a direct and proximate result of Defendants' misrepresentations and material omissions.

115.   Plaintiffs Kirsopp and Neff and the Connecticut Sub-Class are entitled to pursue claims against Defendants during the Sub-Class Period for damages, injunctive relief, costs and attorneys' fees pursuant to CUTPA §42-110g(d) to redress Defendants' violations of CUTPA §42-110b.   Plaintiffs and the Connecticut Sub-Class seek damages, injunctive relief, costs, and attorneys' fees pursuant to CUTPA to remedy Defendants' violations of CUTPA.

22

CLASS ACTION COMPLAINT

**SIXTH CLAIM FOR RELIEF**
**Violations of the Maryland Consumer Protection Act**
**(Brought on Behalf of the Maryland Sub-Class)**

116.   Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

117.   Plaintiffs Kratz and Krapf and the Maryland Sub-Class members are "consumers" and "persons" within the meaning of Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §13-101(c) and (h); Defendants are "merchants" within the meaning of MCPA §13-101(f).

118.   The Four Stroke Outboards are "consumer goods" and "merchandise" within the meaning of MCPA §13-101(d) and (f).

119.   The MCPA proscribes any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" in connection with the sale of consumer goods. MCPA §13-301(1).

120.   The MCPA forbids any "[r]epresentation that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have"; and "[c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not."  MCPA §13-301(2)(i) and (2)(iv).

121.   The MCPA also proscribes as unfair and deceptive the following trade practices: "[f]ailure to state a material fact if the failure deceives or tends to deceive; [a]dvertisement or offer of consumer goods . . . [w]ithout intent to sell . . . them as advertised or offered; [k]nowingly false statement that a service, replacement, or repair is needed; [d]eception, fraud, false pretense, false premise,

23

misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods, consumer realty, or consumer service . . . or [t]he subsequent performance of a merchant with respect to an agreement of sale." MCPA §13-301(3), (5)(1), (7), (9)(i) and (9)(iii).

122. Defendants falsely represented material facts regarding the Four Stroke Outboards that misled Plaintiffs Kratz and Krapf and Maryland Sub-Class members as more fully alleged herein.  MCPA §13-301(9)(i)

123. Plaintiffs Kratz and Krapf and the Maryland Sub-Class have suffered an ascertainable loss because they did not obtain the full value of the Four Stroke Outboards due to Defendants' misrepresentations.  Accordingly, Plaintiffs Kratz and Krapf and the Maryland Sub-Class have suffered injury in fact and lost money or property as a direct and proximate result of Defendants' misrepresentations and material omissions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and relief against Defendants as follows:

A.   That the Court certify the nationwide Class and the Sub-Classes under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the members of the Class;

B.   That the Court declare that Defendants' conduct violates the statutes referenced herein;

C.   That the Court order Defendants to conduct a corrective advertising and information campaign advising consumers that the Four Stroke Outboards do not have the characteristics, uses, benefits, and quality Defendants have claimed;

D.     That the Court order Defendants to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

E.     That the Court order Defendants to notify each and every individual and/or business who purchased the Four Stroke Outboards of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendants;

F.     That the Court order Defendants to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon;

G.     That the Court order Defendants to issue a recall and pay for the cost of repairing the designing and/or manufacturing defect;

H.     That the Court order Defendants to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendants as a result of their acts or practices as alleged in this Complaint;

I.     That the Court award damages to Plaintiffs and the Class members, including the cost of repairing or remedying the defects to the Four Stroke Outboards;

J.     That the Court enter an Order awarding costs, expenses, and reasonable attorneys' fees; and

CLASS ACTION COMPLAINT

1     K.     That the Court grant such other and further relief as may be just and

2  proper.

3                              **JURY DEMAND**

4       Plaintiffs demand a trial by jury on all causes of action so triable.

5

6  DATED:  April 1, 2014                    SCOTT+SCOTT,
                                            ATTORNEYS AT LAW, LLP
7

8                                           ____/s/Hal D. Cunningham____
                                            Christopher M. Burke (214799)
9                                           cburke@scott-scott.com
                                            Hal D. Cunningham (243048)
10                                          hcunningham@scott-scott.com
11                                          4771 Cromwell Avenue
                                            Los Angeles, CA 90027
12                                          Telephone: 213-985-1274
                                            Facsimile: 213-985-1278
13

14                                          David R. Scott
15                                          SCOTT+SCOTT,
                                            ATTORNEYS AT LAW, LLP
16                                          156 South Main Street
17                                          P. O. Box 192
                                            Colchester, CT 06415
18                                          Telephone: 860-537-5537
19                                          Facsimile: 860-537-4432
                                            drscott@scott-scott.com
20

21                                          James J. Pizzirusso*
22                                          Nathaniel C. Giddings*
                                            HAUSFELD LLP
23                                          1700 K Street NW, Suite 650
24                                          Washington, DC 20006
                                            Telephone:  202-540-7200
25                                          Facsimile: 202-540-7201
26                                          jpizzirusso@hausfeldllp.com
                                            ngiddings@hausfeldllp.com
27

28                                          26

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

\*Applications for permission to appear *pro hac vice* forthcoming

*Attorneys for Plaintiffs*

27

CLASS ACTION COMPLAINT